UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHEN DIVISION

MICHAEL SCOTT CLARK, PHYLLIS
C. CLARK, and SHANNON CLARK                                              PLAINTIFFS

v.                                                          CIVIL ACTION NO. 3:14cv505-DPJ-FKB

GENERAL MOTORS                                                           DEFENDANT

ORDER

This products-liability action is before the Court on Defendant General Motors' ("GM") Motion for Summary Judgment [15].  For the reasons that follow, the Court, having considering the parties' memoranda, the contents of the record, and the pertinent authorities, finds that the Motion should be granted.

I.      Background and Procedural History

This lawsuit stems from the improper deployment of the air bags in Plaintiffs' 2008 Chevrolet Tahoe.  Def.'s Mem. [16] at 1–2.  The Tahoe at issue was shipped from GM, the manufacturer, to a dealer on December 18, 2007, and was originally sold by the dealer on March 10, 2008.  *See* Vehicle Delivery Information [16-2]; Application for Title [16-4].  Plaintiffs Michael and Phyllis Clark then purchased the vehicle secondhand from Asbury Automotive Mississippi, LLC ("Asbury") on March 10, 2010.  *See* Purchase Order [16-5].  On November 28, 2012, Plaintiff Shannon Clark was driving the Tahoe when the air bags suddenly and improperly deployed while he was stopped at an intersection, resulting in damage to the vehicle but no personal injury to Clark or the passenger.  Def.'s Mem. [16] at 1–2.

Plaintiffs filed suit against GM and Asbury, in the Circuit Court of Hinds County, Mississippi, on May 21, 2014.  *See* Compl. [1-1].  The Complaint alleged claims for breach of express and implied warranties, negligence, gross negligence, and recklessness, and requested

both damages and injunctive relief.  *Id.*  GM and Asbury subsequently removed the case to this Court on June 27, 2014, *see* Notice of Removal [1], and Asbury moved to compel arbitration [9].

This Court granted the motion to compel arbitration as to both parties and administratively closed the case.  *See* September 22, 2014 Order [11].  On August 19, 2015, however, GM moved to modify the Order compelling arbitration to exclude Plaintiffs' claims against GM from arbitration and re-open the matter on the Court's docket.  Pls.' Mot. [13].  This Motion was granted, *see* Oct. 8, 2015 Order [14], and, after the case was re-opened, GM moved for summary judgment.  Briefing on the Motion is now complete; the Court has subject-matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The non-moving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  In reviewing the evidence, factual controversies

are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam).

III. Analysis

    A. Breach-of-Warranty Claims

Plaintiffs seek recovery against GM for breach of both express and implied warranties. Compl. [1-1] ¶¶ 23–34. GM contends that these claims are time-barred under the relevant statute of limitations, which provides that "[a]n action for breach of any contract for sale must be commenced within six (6) years after the cause of action has accrued." Miss. Code Ann. § 75-2-725(1). That statute also provides that

> [a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

*Id.* § 75-2-725(2).

"The plain language of the statute provides that a cause of action for breach of warranty accrues when tender of delivery of goods is made." *Forbes v. Gen. Motors Corp.*, 993 So. 2d 822, 824 (Miss. 2008) (quoting *Rutland v. Swift Chem. Co.*, 351 So. 2d 324, 325 (Miss. 1977))

3

(internal quotation marks omitted). The case law is also clear that "with regard to breach-of-warranty claims against automobile manufacturers, the statute of limitations 'bars breach of warranty claims six years from the date of delivery of the product.'" *Id.* (citing *Estate of Hunter v. Gen. Motors Corp.*, 729 So. 2d 1264, 1277 (Miss. 1999)).

Relying on this body of law, GM argues that any breach-of-warranty claim would have accrued when the vehicle was initially sold and delivered to the original purchaser on March 10, 2008. Def.'s Mem. [16] at 3. As such, the limitations period expired March 10, 2014, over two months before Plaintiffs filed their May 21, 2014 lawsuit. Plaintiffs offer three arguments in hopes of avoiding section 75-2-725(2): (1) the future-performance exception; (2) the discovery rule; and (3) tolling. None of these arguments prevails.

        1.      Future-Performance Exception

Section 75-2-725(2) contains an exception to the six-year statute of limitations where "a warranty explicitly extends to future performance of the goods." "The 'overwhelming majority' of courts have interpreted future performance exceptions such as those contained in section 75-2-725 very strictly." *Crouch v. Gen. Elec. Co.*, 699 F. Supp. 585, 594 (S.D. Miss. 1988) (quoting *Wilson v. Hammer Holdings, Inc.*, 671 F. Supp. 94, 96 (D. Mass. 1987); *Standard Alliance Indus. v. Black Clawson Co.*, 587 F.2d 813, 820 (6th Cir. 1978)). For a warranty to fit within the exception it must "explicitly promise or guarantee future performance of the goods; it must be clear, unambiguous and unequivocal." *Id.* (citing *Rutland*, 351 So. 2d at 325); *see also Forbes*, 993 So. 2d at 825 ("The statute in unmistakable language [provides] that in order for a warranty of this type to extend beyond six years after the date of tender of delivery, such warranty must

*explicitly* relate to future performance of the goods." (alteration and emphasis in original) (quoting *Rutland*, 351 So. 2d at 325) (internal quotation marks omitted)).

The only two warranties Plaintiffs specifically mention in their response are not sufficient. First, though it is not contained in the record, Plaintiffs' memorandum states that GM "warrant[ed] the vehicle against defects in design and operation for a period not to exceed three years or 36,000 miles." Pls.' Mem. [19] at 4. It is questionable whether "repair and replace" warranties of this nature constitute an express warranty of future performance. *See Crouch*, 699 F. Supp. at 595 ("[A] promise to repair and/or replace warrants not that the goods will perform in the future but that if they do not, the supplier or manufacturer will make the necessary repairs."). Regardless, this warranty had expired by the time Plaintiffs purchased the vehicle.

Second, Plaintiffs rely on a "Special Coverage" warranty that ran until the earlier of 120,012 miles or March 10, 2018. Again, however, Plaintiffs do not offer any evidence of the precise terms of this warranty, citing instead to a "Warranty Tracker" report that merely lists "Special Coverage 11273" in addition to the expired warranties. Warranty Tracker [18-1] at 2. But that report states that the special warranty "provides additional coverage for a specific component and specific time frame if condition exists." *Id.*

The question is what "condition" does the coverage address? To this end, GM has offered credible record evidence that "Special Coverage 11273" is a "warranty coverage adjustment limited to replacement of the throttle position sensor and reprogramming the Engine Control Module." Hakim Aff. [20-1] ¶ 9; *see also* Service Bulletin 11273B [20-3] (directing dealers to replace throttle position sensor and reprogram Engine Control Module). And the Department Head of GM's Engineering Analysis group further clarified that "Technical Service

Bulletin No. 11273 did not provide extended warranty coverage to the air bag systems on the 2008 Chevrolet Tahoe." Hakim Aff. [20-1] ¶ 12. Thus, this "Special Coverage" warranty fails to support Plaintiffs' breach-of-warranty claim because it did not extend to the failure at issue.

Other than those two warranties, Plaintiffs generally reference "express and implied warranties" that "clearly extend to the future and on-going performance of the vehicle." *See* Pls.' Mem. [19] at 4. Starting with the latter, implied warranties—by definition—"do[ ] not satisfy the statute's requirement that the warranty must *explicitly* relate to future performance of the goods since '[e]xplicit means something expressed or clearly stated and is more than merely implied.'" *Crouch*, 699 F. Supp at 593 (quoting *Rutland*, 351 So. 2d at 325); *see also Childs v. Gen. Motors Corp.*, 73 F. Supp. 2d 669, 674 (N.D. Miss. 1999) (holding that section 75-2-725 requires breach of implied warranty claims be brought within six years of the date of delivery). Regardless, Plaintiffs do not identify any other express or implied warranties, and unsubstantiated assertions are not proper summary-judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Accordingly, Plaintiffs have not established the future-performance exception.

2. Discovery Rule

Plaintiffs contend that "a breach [ ] does not occur and a cause of action does not accrue until such time as there is a defective performance which is or should be reasonably discoverable by the Plaintiffs." Pls.' Mem. [19] at 4. They base this discovery-rule argument on section 75-2-725(4), which they say "clearly preserve[s]" it and therefore conflicts with section 75-2-725(2). *Id.* at 5.

Subpart (2) sets the accrual date "regardless of the aggrieved party's lack of knowledge of the breach." Miss. Code Ann. § 75-2-725(2). Subpart (4) merely states that this section "does not alter the law on tolling of the statute of limitations." It does not mention the discovery rule, and as a general statute, it cannot overcome the more specific guidance found in subpart (2). *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (observing that "it is a commonplace of statutory construction that the specific governs the general"). Plaintiffs' construction is not persuasive.

### 3. Tolling

Again relying on section 75-2-725(4), Plaintiffs next contend that the limitations period should be tolled as to Shannon Clark—who was a minor at the time of the alleged breach. Pls.' Mem. [19] at 5. And indeed, Mississippi law mandates tolling of the statute of limitations until an individual reaches the age of majority. *See* Miss. Code Ann. § 15-1-59; *Taylor v. Gen. Motors Corp.*, 717 So. 2d 747, 750 (Miss. 1998). But Plaintiffs have not offered any evidence that would support an award of damages as to Shannon Clark under Mississippi Code section 75-2-714, which defines the measure of damages recoverable for breach of warranty. *See Chaney v. Gen. Motors Acceptance Corp.*, 349 So. 2d 519, 521 (Miss. 1977). That section dictates that "[t]he measure of damages for breach of warranty is the difference . . . between the value of the goods accepted and the value they would have had if they had been as warranted," and further clarifies that incidental and consequential damages are also recoverable. Miss. Code. Ann. § 75-2-714(2)–(3).

Here, the record evidence indicates that Michael and Phyllis Clark were the sole purchasers and owners of the Tahoe.  *See* Title History [16-3] at 4.  Shannon Clark, on the other hand, neither purchased the vehicle nor holds an ownership interest in it.  Shannon is therefore without any recoverable damages for breach of warranty.[1]  So even assuming the statute of limitations was tolled with regard to Shannon Clark, Plaintiffs have failed to demonstrate a possibility of recovery on this basis.

Finally, Plaintiffs argue for tolling based on "the proposition that equity tolls the statute of limitations in cases of fraud or concealment."  Pls.' Mem. [19] at 6 (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 20 (2001)).  Specifically, Plaintiffs contend that they

> alleged that Defendants intentionally and fraudulently concealed from Plaintiffs *the nature and existence of the air bag and safety system defect*.  Taking these allegations as true, as the Court must in this context where discovery of all of the relevant events has not been undertaken, Defendant GM is not entitled to summary judgment based on its strict and inequitable interpretation of section 75-2-725.

*Id.* (emphasis added).

Even assuming this case was before the Court under Rule 12(b)(6)—the standard Plaintiffs reference—fraud claims must be pleaded with particularity.  *See* Fed. R. Civ. P. 9(b); Miss. R. Civ. P. 9(b).  As Mississippi courts have stated, fraud "will not be inferred or presumed and may not be charged in general terms."  *In re Estate of Hudson*, 962 So. 2d 90, 93 (Miss. 2007) (quoting *Howard v. Estate of Harper ex rel. Harper*, 947 So. 2d 854, 861 (Miss. 2006)) (internal quotation marks omitted).  Here, Plaintiffs did not plead a fraud or fraudulent concealment claim, or even aver such conduct, as to the "nature and existence of the air bag and

---

[1] Nor does Shannon Clark seek incidental or consequential damages as defined by Mississippi Code section 75-2-715.  *See* Compl. [1-1].

safety system defect." Pls.' Mem. [19] at 6.  Instead, the sole reference to "fraudulent representations" in the facts section of their Complaint relates to repairs.  Compl. [1-1] ¶ 19.  Finally, the matter is before the Court on summary judgment, a standard Plaintiffs have not met.

Based on all of this, the statute of limitations for the breach-of-warranty claims ran on March 10, 2014, over two months before Plaintiffs filed suit.  *See, e.g.*, *Forbes*, 993 So. 2d at 826 (finding claim for air bag failure to be time-barred by section 75-2-725 and that manufacturer's express warranty did not fall under the future-performance exception); *Estate of Hunter*, 729 So. 2d at 1267 (finding breach-of-warranty claim time-barred because statute of limitations runs six years from date of delivery of the product).  GM's Motion is therefore granted as to those claims.[2]

    B.    Tort Claims

In addition to claims for breach of warranty, Plaintiffs assert a negligence claim against GM based on a series of "negligent, grossly negligent and reckless" actions related to the design, manufacture, testing, sale, and delayed repair of the 2008 Chevrolet Tahoe.  *See* Compl. [1-1] ¶¶ 35–39.  But GM asserts that these claims are limited to economic damages associated with the Tahoe itself, so the claims must be dismissed under the economic-loss doctrine.

There is no dispute that the claims in this case are "characterized as damage to the vehicle itself, or as purely economic."  Pls.' Mem. [19] at 8.  "The overwhelming majority of

---

[2]Plaintiffs mention a desire for discovery, but that issue is not properly before the Court.  They have not filed a motion as required by Uniform Local Rule 7(b)(3)(C), and they have not complied with the procedural or substantive requirements of Federal Rules of Civil Procedure Rule 56(d).  Finally, to the extent they seek discovery regarding fraudulent concealment of the alleged defect, they cannot raise new claims in response to a motion for summary judgment.  *See infra*.

courts that have confronted the issue have concluded that a plaintiff who suffers only economic loss as the result of a defective product may have no recovery in strict liability or negligence, though such damages may be pursued under a breach of warranty theory of liability." *E. Miss. Elec. Power Ass'n v. Porcelain Prods. Co.*, 729 F. Supp. 512, 514 (S.D. Miss. 1990). And though the Mississippi Supreme Court has not addressed the doctrine, the Mississippi Court of Appeals applied it in *State Farm Mutual Automobile Insurance Co. v. Ford Motor Co.*, 736 So. 2d 384, 387 (Miss. Ct. App. 1999).

Plaintiffs take no issue with the notion that Mississippi—like so many other jurisdictions—would adopt the economic-loss doctrine. *See* Pls.' Mem. [19] at 6–8 (quoting *State Farm Mut. Auto. Ins. Co.*, 736 So. 2d at 387). But they contend that "courts have recognized certain exceptions to the economic loss doctrine, which, if applicable, will allow an injured party to pursue claims based on negligence even though purely economic damages are being sought." Pls.' Mem. [19] at 8. They further suggest that their claims for punitive damages, injunctive relief, and attorney's fees evade the doctrine. The Court will address both issues in turn.

1. Exceptions to Economic-Loss Doctrine

Even a quick survey of economic-loss-doctrine cases from across the country reveals a complex and inconsistent history producing no uniform approach. But Plaintiffs have not examined that body of law, relying instead on a single opinion from the Supreme Court of Illinois, *Fireman's Fund Insurance Co. v. SEC Donohue*, 679 N.E.2d 1197 (Ill. 1997). That case outlined Illinois' recognized exceptions to the economic-loss doctrine, including: (1) injury from a sudden or dangerous occurrence; (2) damages caused by fraud; and (3) damages

proximately caused by negligent misrepresentations by a defendant in the business of supplying information for the guidance of others in their business transactions. *Id.* at 1199 (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982)). Plaintiffs pursue the first two exceptions.

Starting with the sudden-or-dangerous-occurrence exception, Plaintiffs contending that because the air bags deployed suddenly, the economic-loss doctrine does not apply. Pls.' Mem. [19] at 9. But even Illinois abandoned this exception when—as here—the damage is limited to the product itself. *Trans States Airlines v. Pratt & Whitney Can., Inc.*, 682 N.E.2d 45, 46 (Ill. 1997). Illinois now follows what it views to be the majority rule, *id.* at 53, and limits the sudden-or-dangerous-occurrence exception to those claims where "the property damaged [is] property other than the allegedly defective product itself." *Westfield Ins. Co. v. Birkey's Farm Store, Inc.*, 924 N.E.2d 1231, 1243 (Ill. App. Ct. 2010). There is no reason to believe Mississippi would follow an Illinois rule that Illinois was forced to reverse.

The only other exception Plaintiffs offer is a fraud exception. Again, a sizeable body of law exists on this point. *See generally* Ralph C. Anzivino, The Fraud In The Inducement Exception To The Economic Loss Doctrine, 90 Marq. L. Rev. 921, 931–33 (2007) (discussing various approaches). But Plaintiffs have not addressed it, arguing simply that they "have been tortuously injured as the result of material, intentional and fraudulent representation and misrepresentations on the part of Defendants concerning the defective nature of the airbag system as well as to the adequacy and effectiveness of the attempted repairs." Pls.' Mem. [19] at 9.

It is not clear whether Mississippi would adopt a fraud exception.  *See, e.g.*, *JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780, 783 (7th Cir. 2015) ("Under Indiana law, a buyer who has received non-conforming goods cannot sue a seller for negligent misrepresentation to avoid the economic loss doctrine, which limits the buyer to contract remedies for purely economic losses.").  And even if so inclined, it is not clear which version it might follow.  It seems doubtful, though, that Mississippi would adopt an exception based on fraud that allows a product-liability plaintiff to pursue tort damages for purely economic loss to the product itself related to alleged warranty breaches.  *See* W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton on the Law of Torts, § 92 at 656 (5th ed. 1984) ("[I]f the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the only theory upon which liability would be imposed."); *State Farm*, 736 So. 2d at 387 (noting that "[a]llowing recovery in tort under circumstances essentially commercial in nature would not further the purpose of strict liability" and that "[c]ontract law and the law of warranty are well suited to handle controversies in which commercial purchases do not live up to the expectations of the consumer").

In any event, the Court need not answer the question today because Plaintiffs have not pleaded any fraud claims.  As noted above, they do mention in the facts section of their Complaint that GM made misrepresentations "regarding the status of the investigation and the timing [o]f the repairs." Compl. [1-1] ¶ 19.  First, there are no allegations whatsoever that GM committed fraud "concerning the defective nature of the airbag system" as they now argue. Pls.' Mem. [19] at 9.  Second, even as to the repairs, those factual averments relate to GM's duties under the warranties.  And, more to the point, Plaintiffs did not plead a claim for fraud related to

the repairs. The only claims they brought were for breach of express warranty (Count I), breach of implied warranty (Count II), negligence, gross negligence and recklessness (Count III). Compl. [1-1] at ¶¶ 23–36.

As a general rule, "[a] claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). This rule is rooted in the need to provide adequate notice. As stated in *De Franceschi v. BAC Home Loans Servicing, L.P.*, "[a] properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'" 477 F. App'x 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698–99 (2009) (emphasis added)).

Accordingly, "district courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment." *Id.* This rule encompasses new factual theories supporting previously pleaded legal theories. *See, e.g.*, *id.*; *see also Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) (affirming refusal to consider new factual theory); *Benavides v. EMC Mortg. Corp.*, Civil Action No. 3-12-46, 2013 WL 416195, at *4 (S.D. Tex. Jan. 31, 2013) (Costa, J.) (refusing to consider new factual theory supporting previously pleaded legal cause of action).

So looking at the actual claims Plaintiffs pleaded, the warranty claims in Counts I and II are generally considered the proper avenues for pursuing damages as to the product itself. *E. Miss. Elec. Power Ass'n*, 729 F. Supp. at 514. As addressed, those claims are time-barred. And the negligence-type claims found in Count III are common fodder for the economic-loss doctrine. *See State Farm Mut. Auto. Ins. Co.*, 736 So. 2d at 387.

the repairs. The only claims they brought were for breach of express warranty (Count I), breach of implied warranty (Count II), negligence, gross negligence and recklessness (Count III). Compl. [1-1] at ¶¶ 23–36.

As a general rule, "[a] claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). This rule is rooted in the need to provide adequate notice. As stated in *De Franceschi v. BAC Home Loans Servicing, L.P.*, "[a] properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'" 477 F. App'x 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698–99 (2009) (emphasis added)).

Accordingly, "district courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment." *Id.* This rule encompasses new factual theories supporting previously pleaded legal theories. *See, e.g.*, *id.*; *see also Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) (affirming refusal to consider new factual theory); *Benavides v. EMC Mortg. Corp.*, Civil Action No. 3-12-46, 2013 WL 416195, at *4 (S.D. Tex. Jan. 31, 2013) (Costa, J.) (refusing to consider new factual theory supporting previously pleaded legal cause of action).

So looking at the actual claims Plaintiffs pleaded, the warranty claims in Counts I and II are generally considered the proper avenues for pursuing damages as to the product itself. *E. Miss. Elec. Power Ass'n*, 729 F. Supp. at 514. As addressed, those claims are time-barred. And the negligence-type claims found in Count III are common fodder for the economic-loss doctrine. *See State Farm Mut. Auto. Ins. Co.*, 736 So. 2d at 387.

2.     Other Relief

Finally, Plaintiffs note that they have "asserted claims for punitive damages, injunctive relief and attorney's fees . . . which are not purely economic loss damages." *Id.* But because the economic-loss doctrine is "designed to maintain a distinction between damage remedies for breach of contract and for tort," *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 441–42 (5th Cir. 2008) (internal quotation marks omitted), courts have refused to find that such requests are sufficient to overcome dismissal of a tort claim based solely on damages to the product itself. *See, e.g.*, *Schaefer v. IndyMac Mortg. Servs.*, No. 12-cv-159-JD, 2012 WL 4929094, at *3 (D.N.H. Oct. 16, 2016) (injunction request did not bar dismissal of negligence claims under economic-loss doctrine); *Theuerkauf v. United Vaccines Div. of Harlan Sprague Dawley, Inc.*, 821 F. Supp. 1238, 1242 (W.D. Mich. 1993) (noting that allowing plaintiffs to defeat economic-loss doctrine by seeking punitive damages "would swallow the [d]octrine").

Aside from that general concern, the injunctive relief Plaintiffs seek—recall—is not available because there is "no post-sale duty" to warn or recall under Mississippi law. *Murray v. Gen. Motors, L.L.C.*, 478 F. App'x 175, 182 (5th Cir. 2012) (citing *Noah v. Gen. Motors Corp.*, 882 So. 2d 235, 239 (Miss. Ct. App. 2004)). Punitive damages are not available absent compensatory damages. Miss. Code Ann. § 11-1-65(1)(c). And attorney's fees are not recoverable in Mississippi without a contractual provision or statutory authority, neither of which have been pleaded or shown. *Century 21 Deep S. Props., Ltd. v. Corson*, 612 So. 2d 359, 375 (Miss. 1992). The economic-loss doctrine bars Plaintiffs' tort claims.[3]

---

[3]GM also cites the Mississippi Products Liability Act (MPLA), which applies to "any action for damages caused by a product, including, but not limited to, any action based on a theory of strict liability in tort, *negligence* or breach of implied warranty, *except for commercial*

IV.     Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, GM's Motion for Summary Judgment [15] is granted and Plaintiffs' claims are dismissed with prejudice. A separate final judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure. The Clerk of Court is instructed to again administratively close the case while the claims against Asbury proceed in arbitration.

**SO ORDERED AND ADJUDGED** this the 23rd day of June, 2016.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

*damage to the product itself*." Miss. Code Ann. § 11-1-63 (emphasis added). Based on the wording of the statute, it is not clear that the MPLA would preempt other claims, like negligence claims, for "damage to the product itself." *Id.*; *see also Brasscorp v. Highside Chems., Inc.*, No. 1:02CV84-LG-JMR, 2007 WL 1673539, at *2 (S.D. Miss. June 7, 2007) ("Cliplight's claims are for damage to the Flushworks Machine itself, resulting in economic losses. Therefore, Cliplight's tort claims are not precluded by the MPLA."). In any event, the GM's Reply seems to shift focus to the economic-loss doctrine, so the Court has not explored this issue.